**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

TYLER BICKNESE,

*Plaintiff*,

v.

HY-C COMPANY LLC

*Defendant*.

_________________________________/

**CASE NO.: 4:26-cv-01799**

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Tyler Bicknese files this action against his former employer, the Hy-C Company, LLC, for damages arising from violations of the Americans with Disabilities Act ("**ADA**"):

## PARTIES

1. Plaintiff is a resident of Saint Loui of Saint Louis County, Missouri. At all times material, he was Defendant's employee. 42 U.S.C. § 12111(4). Plaintiff is a qualified individual under the ADA. 42 U.S.C. § 12111(8).

2. Defendant is a is a domestic limited liability company with its principal place of business in Saint Louis County, Missouri. Defendant was Plaintiff's is an employer. 42 U.S.C. § 1211(5)(A). Defendant is a leading American manufacturer of, among other things, chimney covers, home safety equipment, and wildlife exclusion products. Defendant's operating facilities (where Plaintiff worked) are located in Saint Louis, Missouri.

## JURISDICTION, VENUE, AND CONDITIONS PRECEDENT

3. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 for claims arising under the ADA. This Court has personal jurisdiction over Defendant because Defendant continuously conducts business within this District.

4. Pursuant to 28 U.S.C. § 1391, venue is proper in this District because Defendant is subject to personal jurisdiction in this District and because the acts occurred in this District.

5. Plaintiff submitted his dual-filed his charge with the EEOC on July 7, 2026. *See* EEOC Charge and Right to Sue, attached hereto as Composite Exhibit "A." On July 21, 2026, Plaintiff received his right to sue from the EEOC. *Id*. at 5. He has yet to receive his right to sue from the Missouri Commission on Human Rights.

## GENERAL ALLEGATIONS

6. Plaintiff worked as a maintenance technician for Defendant from June 2023 to May 5, 2026.

7. Plaintiff has undergone professional medical care for numerous significant, chronic, and recurrent mental health disorders including bipolar disorder for a number of years.

8. In early December 2025, Plaintiff reported his disability diagnosis to numerous members of management and ownership, including Araceli Escalante (Human Resources Administrator), Dan Kastner (Director of Operations), and David Walters (President).

9. Through these individuals, he informed Defendant that he needed to come in to work slightly later to ensure that he had sleep pattern that a treater believed medically necessary to manage his disability. Under the schedule he had been on, he had been required to wake up between 4:00 and 5:00 a.m. to make the start of his 6:00 a.m. shift.

10. At that time, Plaintiff specifically asked Escalante for any and for any and all (a) ADA and (b) FMLA paperwork that would facilitate his requests.

11. None came.

12. He was, however, accommodated with a change to his shift start. Immediately thereafter, he began facing retaliation and discrimination. Among other things: he was screamed at by the

head of the welding department in a physically threatening way, and he began being watched via surveillance footage in a manner that his peers were not.

13. Later in December 2025, Kastner witnessed Plaintiff's direct superior, Nick Moyer, tie him up and simulate anal sex with him.

14. Kastner did nothing to report the conduct or reprimand Moyer. This was despite Kastner's full awareness of prior instances in which peers had touched Plaintiff in an unwanted sexual manner.

15. Instead, he told Moyer to "be careful around" Plaintiff because Plaintiff would report him for such conduct (as he had a previous superior who had *also* inappropriately touched him in a sexual manner in May 2025).

16. This conduct exacerbated Plaintiff's distressed mental state.

17. On January 19, 2026, Plaintiff was denied a raise due to his accommodation. Specifically, Kastner told him that Defendant had 'been really flexible with you, so you're not getting a raise.' Plaintiff had previously consistently received positive reviews and raises.

18. The following day, he was told that 'tardiness' and 'attendance' were an issue.

19. On March 11, 2026, Plaintiff again reported to HR that individuals were surveilling him, both physically and through Defendant's cameras.

20. On March 13, 2026, Plaintiff attended a meeting with Kastner and Escalante to discuss his allegations of harassment and stalking. During the meeting, Garrison attempted to enter the meeting but was denied. Kastner referenced Plaintiff's mental health during the meeting. Kastner also dismissed Plaintiff's complaints as being paranoid and crazy.

21. From March 13, 2026, onward, Plaintiff was repeatedly questioned about his performance but no formal write-ups or disciplinary actions were recorded.

22. On April 10, 2026, Plaintiff's supervisor confirmed that Plaintiff was constantly being surveilled on cameras in the manufacturing area of the plant.

23. Again, this increased Plaintiff's stress and anxiety to a point of becoming unavailable.

24. On May 5, 2026, Plaintiff was abruptly terminated during a meeting with Kastner. There is no written rationale for the firing.

25. He was told that he would be paid for the remainder of the week, but was not.

## COUNT I
## VIOLATION OF ADA (DISCRIMINATION – DISPARATE TREATMENT)

26. Plaintiff realleges and incorporates by reference paragraphs 1-25 as if fully set forth herein.

27. Plaintiff is a qualified individual with a disability under the ADA.

28. His chronic, recurrent mental disorders constituted a mental and/or physical impairment which actually (or as perceived y Defendant) substantially limited one or more life activities.

29. Defendant was fully aware of Plaintiff's disability.

30. Plaintiff was discriminated against by Defendant, among other ways, due to Defendant's limitation, segregation, penalization for receiving a reasonable accommodation, and classification of him in a manner that adversely affected his opportunities and status due to his disability, culminating in his termination.

31. The discrimination was undertaken by high-ranking individuals such that it constitutes an official decision of Defendant.

32. Multiple high-ranking agents of Defendant were aware of the discriminatory conduct and failed to take adequate steps to remedy the misconduct despite possessing the ability to do so.

33. Defendant acted with malice or reckless indifference to Plaintiff's rights. Further, Defendant's management knowingly countenanced or approved of the discrimination, as exhibited by the termination of Plaintiff.

34. As a proximate and direct result of Defendant's conduct, Plaintiff suffered and will continue to suffer damages, including emotional distress, inconveniences, loss of income and benefits, humiliation, or other indignities, in an amount to be determined at trial.

**COUNT II**
**VIOLATION OF ADA (RETALIATION)**

35. Plaintiff realleges and incorporates by reference paragraphs 1- 25 as if fully set forth herein.
36. Plaintiff is a qualified individual with a disability under the ADA.
37. His chronic, recurrent mental disorders constituted a mental and/or physical impairment which actually (or as perceived by Defendant) substantially limited one or more life activities.
38. Defendant was fully aware of Plaintiff's disability.
39. Plaintiff engaged in protected activity, among other times, when discussing his disability and corresponding treatment needs with his Defendant's human resources and director of operations, and when he reported misconduct that was being directed at him.
40. Defendant took adverse employment actions against him as a result, including refusing to provide him a raise, surveilling him, treating him differently than peers, and ultimately terminating him.
41. These actions were taken because Plaintiff engaged in protected activity.
42. The retaliation as undertaken by high-ranking officials of Defendant, such that the decision constitutes an official decision of Defendant.
43. Multiple high-ranking agents of Defendant were aware of Defendant's conduct and failed to take adequate steps to remedy the misconduct despite possession the ability to do so.
44. Defendant acted with malice or reckless indifference to Plaintiff's rights. Further, Defendant's management knowingly countenanced or approved of the prohibited retaliation.

45. As a proximate and direct result of Defendant's conduct, Plaintiff suffered and will continue to suffer damages, including emotional distress, inconveniences, loss of income and benefits, humiliation, and other indignities, in an amount to be determined at trial.

## REQUEST FOR RELIEF

Plaintiff respectfully requests the Court enter judgment in his favor as follows:

a. Back and front pay resulting from Defendant's violations of the ADA to the fullest extent permitted by law;

b. Compensatory damages resulting from Defendant's violations of the ADA to the fullest extent permitted by law;

c. Punitive damages to punish Defendant's violations of the ADA to the fullest extent permitted by law;

d. Pre-judgment and post-judgment interest;

e. An award of costs and reasonable attorneys' fees; and

f. Such other relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all claims.

Dated: October 19, 2026,

Respectfully submitted,

By: */s/ Deaken Z. Shuler*
Deaken Z. Shuler
Bar No.: 75316 (MO)
dshuler@pollardllc.com
Pollard PLLC
8112 Maryland Ave., Ste. 400
Clayton, MO 63105
Telephone: 954-332-2380
Facsimile: 866-594-5731
*Attorney for Plaintiff*